UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL SHANE THORSON,<br><br>               Plaintiff,<br><br>   v.<br><br>COUNTY OF KLICKITAT, WASHINGTON; JOE RIGGERS, SERGEANT KLICKITAT COUNTY SHERIFF'S OFFICE; ERIK ANDERSON, KLICKITAT COUNTYUNDER-SHERIFF; and JOHN and JANE DOE, EMPLOYEE-AGENTS and FORMER EMPLOYEE-AGENTS OF KLICKITAT COUNTY,<br><br>               Defendants. | NO:  CV-10-5137-RMP<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

## BACKGROUND

This matter comes before the Court on Plaintiff Michael Thorson's motion for summary judgment, ECF No. 37.  Mr. Thorson seeks judgment in his favor, pursuant to Fed. R. Civ. P. 56, on his three claims: (1) violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT~1

4301 *et seq.*, based on disparate treatment arising out of his military service; (2) violation of the Washington Law Against Discrimination ("WLAD"), chapter 49.60 RCW, based on a hostile work environment arising out of Mr. Thorson's military status; and (3) violation of the Washington Industrial Insurance Act, chapter 51 RCW.  *See* ECF No. 27 (Second Amended Complaint).

Having reviewed the parties' submissions, the remaining file in this matter, and the relevant law, the Court is fully informed.

**Facts**

The following facts are undisputed unless otherwise noted.  Plaintiff Shane Thorson applied in September 2007 for a position as deputy sheriff with the Klickitat County, Washington, Sheriff's Office (the "County").  Mr. Thorson indicated on the Personal History and Background Questionnaire that he was "in the process of changing" from enrollment in the Oregon National Guard to the Washington National Guard.  ECF No. 44-3 at 119.  The County hired Mr. Thorson in October 2007.  ECF No. 39 at 2.  At the time he was hired as a weekend deputy sheriff, Mr. Thorson still was a member of the Oregon Army National Guard.  ECF No. 39 at 2.

Mr. Thorson was supervised by Defendant Sergeant Joe Riggers and by Defendant Undersheriff Erik Anderson.[1]  ECF Nos. 44-1, 44-5.  In December 2007, Mr. Thorson informed Mr. Riggers that he was required to fulfill a weekend drill requirement for the Oregon Army National Guard.  Mr. Thorson recalls that he understood from his conversation with Mr. Riggers that Mr. Riggers ordered him to quit the Oregon Army National Guard.  ECF No. 39 at 3.

Mr. Riggers recalls the conversation differently.  Mr. Riggers stated in his deposition that his initial reaction during the December 2007 was confusion because he recalls Mr. Thorson telling him prior to December 2007 that he had turned in his paperwork requesting release from the Oregon Army National Guard.  ECF No. 44-5 at 13-14.  Mr. Riggers states that Mr. Thorson told him that they must have lost his paperwork, and Mr. Riggers wanted to know whether there was anything that Mr. Thorson could do about that.  ECF No. 44-5 at 14.

Mr. Thorson asserts that sometime in or after December 2007, he completed the process of leaving the Oregon Army National Guard.  ECF No. 39 at 3.

---

[1] When referring to the Defendants collectively, the Court refers simply to the "County" because the parties do not dispute whether the individual Defendants were acting in their official capacities.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT~3

1  In February 2008, Mr. Thorson injured a finger during law enforcement
2  training.  Starting in March 2008, Mr. Thorson took unpaid industrial injury leave
3  from his work for the County.  ECF No. 44-3 at 46.  In a letter dated March 14,
4  2008, and stamped received by the County on March 24, 2008, a physician wrote
5  that Mr. Thorson "need[ed] to be off work until April 1, 2008, unless extended by
6  surgery or other treatment."  ECF No. 44-3 at 38.  In a document that is dated
7  March 24, 2008, and stamped received by the County on March 28, 2008, a
8  different physician recommended that Mr. Thorson continue to refrain from work
9  from April 1, 2008, until April 17, 2008, to allow his injury to recover.  ECF No.
10 44-3 at 38.
11 As asserted by Mr. Thorson, he received, to his own surprise, a mobilization
12 order on approximately April 23, 2008.  ECF No. 39 at 5.  In the mobilization
13 order, dated March 19, 2008, the Department of Defense informed members of the
14 Washington Army National Guard's 81st Heavy Brigade Combat Team ("HBCT")
15 that the unit would be deployed to Iraq for twelve months in August 2008.  ECF
16 No. 44-4 at 5.  Mr. Thorson offers by way of explanation that, although he "had
17 instructed the people at the Oregon Army Guard [sic] to let [him] go," the
18 "message never got to the Washington Army National Guard and [his] transfer
19 paperwork switching [him] to the Washington Army National Guard never got
20 turned off."  ECF No. 39 at 5.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4

On April 23, 2008, Mr. Thorson sent by certified mail to Mr. Anderson an envelope containing the following documents: (1) an undated, handwritten note from Mr. Thorson to Mr. Anderson stating, "Here is the paperwork I said I would send you once I got it. I will provide you with more information as I get it."; (2) a notice from the Washington Army National Guard dated January 16, 2008, setting an annual training for a particular unit for July 12-26, 3008; (3) the mobilization order dated March 19, 2008; (4) a notice from the Washington Army National Guard dated April 7, 2008, setting pre-mobilization training from July 27, 2008, until August 8, 2008; (5) a document from a physician's office indicating Mr. Thorson had an appointment scheduled for March 15, 2008, at 9:00 a.m.; and (6) a slip of paper identifying Mr. Thorson as a "patient" of "Handworks Northwest, PLLC," in Richland, Washington, and indicating that Mr. Thorson had an appointment scheduled for May 15, 2008, at 3:00 p.m. ECF No. 44-4 at 1-8. A stamp indicates that the County received the mailing on April 29, 2008, at 8:56 a.m. ECF No. 44-4 at 1.

Mr. Thorson called Mr. Anderson on April 28, 2008, "to inform him that [Mr. Thorson] was being deployed to Iraq." The conversation was tense, and the parties offer somewhat conflicting accounts of the content of the conversation and the reason for the tension between Mr. Thorson and Mr. Anderson. Mr. Thorson contends that Mr. Anderson was angered by Mr. Thorson's military service while

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT~5

the County maintains that Mr. Anderson was surprised that Mr. Thorson had given Mr. Anderson the impression that Mr. Thorson had no further military commitment and had not provided justification for not returning to work following his work injury. It is undisputed, though, that at the conclusion of the conversation Mr. Anderson conveyed to Mr. Thorson his expectation that Mr. Thorson return to work for the County on "light duty" until Mr. Thorson was required to report for military training and/or deployment, unless Mr. Thorson provided a physician's note stating that he was unable to do light duty. *See, e.g.,* ECF No. 44-4 at 9-11.

A string of emails beginning on April 28, 2008, and ending on May 6, 2008, contain statements by Mr. Anderson that the County "had a hard time getting ahold of [Mr. Thorson]" and "advising," "suggesting," and otherwise requesting that Mr. Thorson call Mr. Anderson. ECF No. 44-4 at 9-11, 16, 28-29. At some point during this time period, Mr. Thorson faxed a physician's note, dated April 21, 2008, to the County recommending that Mr. Thorson not return to work before May 15, 2008. ECF No. 44-4 at 14. Mr. Thorson somewhat indirectly requested a leave of absence beginning on May 15, 2008, and ending at the completion of his active duty military service. ECF No. 44-4 at 11.[2]

---

[2] Mr. Thorson stated in a May 1, 2008, email: "I look at all the [training dates for the National Guard] and wonder if I can ask for a leave of absence beginning from my release from the doctor until when my orders run out. It would give me time in between all the dates to visit my family and get everything prepared for me to deploy.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 6

Mr. Anderson responded to Mr. Thorson's initial leave of absence request by requiring Mr. Thorson to submit a separate letter "that clearly asks for the dates requested and the reason for it." ECF No. 44-4 at 10. Mr. Anderson continued, "At this point I would be reluctant to grant any non-mandated leave." ECF No. 44-4 at 10.

On the evening of May 5, 2008, Mr. Thorson sent an email to Mr. Anderson with an attached letter requesting a leave of absence "from May 15th, 2008, until I return from Iraq" and expressing concerns that the County would fire him before he was deployed. ECF No. 44-4 at 25-27. Mr. Anderson responded on May 6, 2008, with an email addressing point-by-point Mr. Thorson's letter and stating, as follows:

> Shane, you are looking at discipline. This is not because of your injury or the National Guard, this is because of your insubordination for refusing to communicate with us as directed over and over.
> I will be emailing and mailing by post a letter to you today, advising of a pre-disciplinary meeting to be held, giving you an opportunity to respond. I will also send a copy to the Union. Before you respond, be advised that you have the right to Union representation regarding this specific matter.

ECF No. 44-4 at 28-29.

---

> Plus I don't know how I would fit on [sic] a work schedule with all the dates for training and include the days that I have drill. So I guess what I am asking is for a leave of absence . . . ." ECF No. 44-4 at 11 (ellipsis in original).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7

On May 7, 2008, Mr. Anderson emailed and mailed a letter informing Mr. Thorson of a predisciplinary meeting on Thursday, May 15, 2008, at 1:00 p.m. ECF No. 44-4 at 30-33. On May 14, 2008, Mr. Thorson requested, by e-mail, an alternative date for the pre-disciplinary hearing to accommodate his medical appointments. ECF No. 44-4 at 34. Mr. Anderson declined to reschedule the meeting. ECF No. 44-4 at 34. Mr. Thorson did not attend the meeting and was subsequently fired.

The Klickitat County Collective Bargaining Agreement ("CBA") defines "Insubordination" as follows:

> Employees shall promptly obey all lawful orders issued by a supervising officer, including relayed orders. Failure to acknowledge the authority of any supervisor by obvious disrespect or by disputing his lawful orders shall be deemed insubordination.

ECF No. 44-4 at 183.

## ANALYSIS

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there are genuine issues of material fact, the court must view the evidence

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT~8

in the light most favorable to the nonmoving party. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1005 (9th Cir. 2011).

Summary judgment is inappropriate where sufficient evidence supports the claimed factual dispute or where different ultimate inferences may reasonably be drawn from the undisputed facts. *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 988 (9th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp.*, 477 U.S. at 325. The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence supporting summary judgment must be admissible. Fed. R. Civ. P. 56(e). Furthermore, the court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

<u>Plaintiff's Objections, ECF No. 57, to Defendant's Declarations at ECF Nos. 52, 53</u>

As a preliminary matter, the Court notes that Mr. Thorson objects to portions of the declarations submitted by the County with its response to the summary

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

judgment motion.  The Court need not address Mr. Thorson's objections at this time because the Court relies only on Plaintiff's submitted declarations and exhibits for purposes of this Order.

### **USERRA Claim**

USERRA, 38 U.S.C. § 4301 *et seq.*, prohibits discrimination against an employee based on his military service.  38 U.S.C. §4311(a).  A defendant is liable under USERRA when "a supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and . . . that act is a proximate cause of the ultimate employment action . . . ." *Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1194 (2011) (emphasis in original).  Under USERRA, the employee plaintiff bears the initial burden of proving, by a preponderance of the evidence, that the employee's military status was at least a motivating factor or substantial factor in the employer's adverse employment action.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  The burden then shifts to the employer to prove, as an affirmative defense, that it "would have taken the same action without regard to the employee's protected status." *Leisek*, 278 F.3d at 899.

Plaintiff argues that when the County asked for two phone calls from Mr. Thorson, it was creating a pretext for his termination and that all Mr. Thorson

needed to do was meet the notice requirements of USERRA in order to trigger all of USERRA's protections.

Plaintiff asserts that he has offered six pieces of direct evidence that his military service was a motivating factor in his termination.  First, Mr. Thorson points the Court to a "Notice to Employer – Claimant's Separation Statement" that the County returned to the Washington State employment insurance benefits department in approximately September or October 2010.  In response, an administrative assistant for the County, Mike Lummio, signed a form that indicated that Mr. Thorson had been discharged for "insubordination" and "inexcusable absences" and further stated:

> Mr. Thorson was told by his supervisor, Joe Riggers [sic] in December 2007 that Mr. Thorson was to quit the Oregon Army National Guard because of Mr. Thorson's weekend sheriff requirements.  Mr. Thorson did not do so.  Mr. Thorson was to attend a disciplinary hearing on May 15, 2008 [sic] at 1:00 PM and failed to show.

ECF No. 44-5 at 36.[3]

---

[3] In a declaration by the administrative assistant who signed the form, Mike Lummio, Mr. Lummio stated that "[t]he purpose of me signing [the form] was purely ministerial," and the form "was completed when it came to me."  ECF No. 43 at 2-3.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 11

However, this explanation, recorded over two years after Plaintiff's termination by someone other than the individual who signed the form and who may or may not have had personal knowledge of the circumstances surrounding the termination, conflicts with the County's explanation on the same employment insurance form in May 2008 and July 2008 in which a different administrative assistant for the County indicated that Plaintiff was terminated for "non communication [sic] by not returning phone calls[,] failure to arrange light duty[,] failure to appear for disciplinary meeting (5/15/08 @ 1:00 PM)[.]" ECF No. 44-5 at 31-34.

Secondly, Plaintiff asserts that the alleged December 2007 order by Mr. Riggers to quit the military itself constitutes direct evidence that Mr. Thorson's military status was a motivating factor in the County's decision to terminate him. However, statements in the record by Mr. Thorson and Mr. Riggers directly conflict as to whether Mr. Riggers ever ordered Mr. Thorson to leave the National Guard, as Mr. Thorson claims. *Compare* ECF No. 39 at 3 (Declaration of Mr. Thorson) *with* ECF No. 44-5 at 15-16, 26 (Deposition of Mr. Riggers).

Third, Mr. Thorson argues that Mr. Anderson admitted that he took Mr. Thorson's military service into account when he ordered Mr. Thorson to conduct light duty. However, Mr. Anderson's statement, affirming that Mr. Anderson took "Mr. Thorson's military service into account when [Mr. Anderson] requested that

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT~12

he do light duty," *see* ECF No. 44-2 at 1, is not direct evidence of an illegal motivation in firing Mr. Thorson when viewed in the light most favorable to the County. Rather, it could indicate a mere inquiry regarding whether, if Mr. Thorson was physically fit enough to deploy, he also was physically able to return to work for the County before his departure date.

Having already identified several material questions of fact that necessitate trial in this case, the Court proceeds no further in examining Plaintiff's arguments regarding direct and indirect evidence supporting summary judgment. Instead, the Court finds that, viewing the evidence in the light most favorable to the County, there remains a question of fact as to whether Mr. Thorson's military service was a substantial or a motivating factor in the County's decision to terminate Mr. Thorson's employment.

**WLAD Claim**

The WLAD protects, in part, a person's right to employment free from discrimination based on "race, creed, color, national origin, sex, honorably discharged veteran or military status, sexual orientation, or the presence of any sensory, mental, or physical disability." RCW 49.60.030; *see also* RCW 38.40.050 ("No member of the organized militia of Washington shall be discharged by his or her employer by reason of the performance of any military duties upon which he or she may be ordered.").

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT~13

"To establish a claim for hostile work environment, a plaintiff must prove that the harassment (1) was unwelcome, (2) was because [he] is a member of a protected class, (3) affected the terms and conditions of [his] employment, and (4) was imputable to [his] employer." *Loeffelhoz v. University of Washington*, 162 Wn. App. 360 (Wash. App. Div. 1 2011) (citing *Antonius v. King County*, 153 Wn.2d 256 (2004)).

Another statute, former RCW 38.40.060 (2007)[4] (Military leave for public employees), provided, at the time of the events at issue in this case:

> Every officer and employee of the state or of any county, city, or other political subdivision thereof who is a member of the Washington national guard or of the army, navy, air force, coast guard, or marine corps reserve of the United States, or of any organized reserve or armed forces of the United States shall be entitled to and shall be granted military leave of absence from such employment for a period not exceeding fifteen days during each year beginning October 1st and ending the following September 30th. Such leave shall be granted in order that the person may report for active duty, when called, or take part in active training duty in such manner and at such time as he or she may be ordered to active duty or active training duty. Such military leave of absence shall be in addition to any vacation or sick leave to which the officer or employee might otherwise be entitled, and shall not involve any loss of efficiency rating, privileges, or pay.

---

[4] The version of the statute in effect in May 2008 provided for 15 days of annual paid military leave for public employees. An amendment that went into effect on June 12, 2008, extended the amount of leave to 21 days. 2008 Washington Advance Legislative Service Ch. 71, § 5.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT~14

> During the period of military leave, the officer or employee shall receive from the state, or the county, city, or other political subdivision, his or her normal pay.

Plaintiff bases his claim that he was subjected to a hostile work environment on: (1) being denied 15 days of requested leave "so he could enjoy 15 days with his family before mobilizing on June 2, 2008," ECF no. 58 at 13 (internal citation omitted); and (2) being asked to quit the Oregon Army National Guard.

As discussed above, there is a material question of fact as to whether Mr. Thorson was asked by his County supervisor to quit the Oregon Army National Guard. *Compare* ECF No. 39 at 3 (Declaration of Mr. Thorson) *with* ECF No. 44-5 at 15-17, 26 (Deposition of Mr. Riggers).

As for Mr. Thorson's claim that denial of 15 days' military leave under RCW 38.40.060 (2007) constituted harassment that affected the terms and conditions of his employment, the Court finds a material question of fact and gaps in Mr. Thorson's legal argument that preclude judgment in his favor on that issue at this time. Mr. Thorson asked for a leave of absence beginning on May 15, 2008, and continuing until the end of his active duty in the military. The Court cannot determine based on the exhibits offered by Plaintiff for purposes of summary judgment that Mr. Thorson had provided any proof to the County that his "active duty" military status would commence on May 15, 2008. Rather, in the documents that Mr. Thorson sent to the County on April 23, 2008, it appears that he was

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT~15

scheduled for training for July 12-26, 2008, ECF No. 44-4 at 4, that active duty for purposes of the mobilization and deployment would begin on August 18, 2008, ECF No. 44-4 at 5, and that an annual training would occur from July 27, 2008, until August 8, 2008, ECF No. 44-4 at 6.

The letter explaining the deployment to civilian employers, dated May 1, 2008, which Mr. Thorson appears to have mailed to the County on May 1, 2008, and faxed on May 5, 2008, ECF No. 44-4 at 18, does not give a definite date for commencement of active duty. ECF No. 44-4 at 19. Rather, it explains, "To further prepare for this mission, your citizen soldier may be ordered to active duty, *as early as 2 June 2008*." ECF No. 44-4 at 19 (emphasis added). Therefore, viewing the evidence in the light most favorable to the County, there remains a question of fact as to when the County was aware of the date of Mr. Thorson's active duty start date and what that active duty start date actually was.

Mr. Thorson's theory of his WLAD claim, with respect to the County's denial of his request for a leave of absence starting on May 15, 2008, lacks legal coherence. Specifically, Mr. Thorson argues that he was entitled to leave under RCW 38.40.060 starting on May 15, 2008, to allow him to "enjoy 15 days with his family," ECF No. 46 at 7-8. However, RCW 38.40.060 (2007) provided for paid time off "in order that the person may report for active duty, when called, or take part in active training duty in such manner and at such time as he or she may be

ordered to active duty or active training duty." Moreover, it is not immediately clear that denial of leave constitutes harassment, and Mr. Thorson does not offer caselaw to support his argument on that count.

### Industrial Insurance Act Claim

Plaintiff argues that Defendant violated the Washington Industrial Insurance Act, specifically RCW 51.48.025, by failing "to send Mr. Thorson's physician a description of the light duty defendants wanted Mr. Thorson to conduct although such notice was required under RCW 51.32.090(4)," failing "to follow the procedure prescribed by RCW 51.32.090(4)(d) when it became apparent that the light duty defendants ordered Mr. Thorson to conduct conflicted with Mr. Thorson's National Guard obligation," and "requiring Mr. Thorson to attend the pre-disciplinary hearing even though Mr. Thorson was not cleared to return to work." ECF No. 27 at 10-11 (Second Amended Complaint).

Under RCW 51.48.025, an employer may not discharge or in any manner discriminate against any employee because the employee has filed, or communicated to the employer an intent to file a claim for workers' compensation benefits. To succeed on a claim for wrongful discharge in retaliation for pursuing workers' compensation benefits, an employee must show that: (1) he exercised or communicated to the employer an intention to exercise a statutory right to pursue workers' compensation benefits under Title 51 RCW; (2) was discharged; and (3)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 17

1. there is a causal connection between the exercise of the legal right and the
2. discharge. *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 54, 68-69
3. (Wash. 1991). Temporal proximity between the protected activity and the
4. discharge, when coupled with evidence of satisfactory work performance, supports
5. an assertion of retaliatory motive. *Wilmot*, 118 Wn.2d at 69; *see also Francom v.*
6. *Costco Wholesale Corp.*, 98 Wn. App. 845, 862 (Wash. App. Div. 3, 2000).

   The documents filed by Mr. Thorson present a material question of fact as to whether Mr. Thorson was non-communicative while he was out on leave and failed to timely inform the County of the status of his injury and military service commitments. *See, e.g.,* ECF No. 44-4 at 28-29. Because there are questions of fact as to whether Mr. Thorson's work performance was satisfactory at the time of his termination, the Court finds that summary judgment is inappropriate as to Mr. Thorson's Industrial Insurance Act retaliation claim.

   Accordingly, the Court **DENIES** Mr. Thorson's Motion for Summary Judgment, **ECF No. 37,** and **WITHHOLDS RULING** on Mr. Thorson's

16. / / /
17. / / /
18. / / /
19. / / /
20. / / /

1  Objections at **ECF No. 57**.

2      **IT IS SO ORDERED**.  The District Court Executive is directed to enter this

3  Order and provide copies to Counsel.

4      **DATED** this 22nd day of February 2012.

5

6                            *s/ Rosanna Malouf Peterson*
                            ROSANNA MALOUF PETERSON

7                          Chief United States District Court Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT~19